Judge McMahon

11 CIV 5346

Louis Pechman
Berke-Weiss & Pechman LLP
488 Madison Avenue – 11th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MANUEL E. JEREZ,

      Plaintiff,

 -against-           COMPLAINT

COMJEM ASSOCIATES, LTD., COMJEM CAPITAL, ECF CASE
LLC, MORRIS COHEN, and JACK COHEN,

      Defendants.
------------------------------------------------------------X

  Plaintiff Manuel E. Jerez ("Jerez" or "plaintiff"), by his attorneys, Berke-Weiss & Pechman LLP, complaining of defendants Comjem Associates, Ltd., Comjem Capital, LLC, Morris Cohen and Jack Cohen (collectively referred to herein as "defendants" or "Comjem"), alleges:

## NATURE OF THE ACTION

  1. This action is brought to recover unpaid minimum wages, unpaid overtime, and other monies pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL"), and the New York Commissioner of Labor's Minimum Wage Order for the Building Service Industry (the "Wage Order," codified at 12 N.Y.C.R.R. 141, *et seq.*) on behalf of plaintiff who works for Comjem.

  2. Defendants have failed to compensate Jerez at the federal and state minimum wage, have failed to pay him statutorily prescribed overtime wages and

spread-of-hours pay, and failed to reimburse Jerez for the costs of purchasing cleaning tools and supplies to maintain defendants' property.

3. Plaintiff seeks injunctive and declaratory relief against defendants' unlawful actions, compensation for the difference between the hourly minimum wage and the hourly wages actually paid to plaintiff, unpaid overtime wages, unpaid spread-of-hours pay, liquidated damages, interest, and attorneys' fees and costs pursuant to the FLSA and the NYLL.

## JURISDICTION

4. This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over plaintiff's claims under the New York State Labor Law pursuant to 28 U.S.C. §§ 1332 and 1367.

## VENUE

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, as the location of Comjem Associates, Ltd. is in the Southern District of New York.

## THE PARTIES

**Plaintiff**

6. Jerez resides in Brooklyn, New York.

7. Jerez was hired as an overnight and weekend groundskeeper at 39 West 14th Street, New York, New York 10011, (the "Building"), an office building owned by defendants, in or about April 1999 and currently works there.

**Defendants**

8. Defendant Comjem Associates, Ltd. ("Comjem Associates") is a New York corporation located at 1430 Broadway, Suite 1505, New York, New York 10018, that owns and operates the Building.

9.   Defendant Comjem Capital, LLC ("Comjem Capital") is a New York corporation located at 1430 Broadway, Suite 1505, New York, New York 10018, that owns and operates the Building.

10.   Defendant Morris Cohen is an owner, officer, and/or agent of the Building, and at all times material herein established and had authority regarding the pay practices at the Building.

11.   Defendant Jack Cohen is an owner, officer, and/or agent of the Building, and at all times material herein established and had authority regarding the pay practices at the Building.

12.   At all relevant times, Comjem Associates and Comjem Capital have been businesses or enterprises within the meaning of the FLSA, engaged in interstate commerce employing more than two (2) employees and doing annual business of at least $500,000.

## FACTS

13.   Jerez, who is seventy-five (75) years old, began working for defendants in or about April 1999. Jerez's duties include attending the Building lobby and overall caretaking of the premises overnight and during the weekend, including maintenance duties such as keeping the premises clean. The Building is a five-story building with commercial and office tenants, such as Sprint and Western Union.

14.   From April 1999 until on or about July 2004, Jerez worked from seven p.m. Saturday and continued through Sunday without interruption until seven a.m. Monday (the "weekend shift").

15.   From on or about July 2004 to the present, Jerez works seven days a week. He works from seven p.m. through seven a.m., from Monday through Saturday (the "weekday shift"), for a total of twelve (12) hours per day. In addition, Jerez works the

weekend shift, from seven p.m. Saturday through seven a.m. Monday, for a total of thirty-six (36) hours over the weekend shift. Per week, Jerez works a total of ninety-six (96) hours.

16. Jerez is not allowed to leave the building during the shifts. In fact, during the weekend shift, Jerez was required to punch in his time card every hour so that defendants had proof that he was remaining on premises. This practice stopped when the time card machine broke approximately two (2) years ago.

17. Jerez works every day of the year, including Thanksgiving and Christmas. In the event Jerez needs time off due to sickness or an emergency, he personally has to find someone to cover for him before being allowed to take time off. If Jerez cannot find someone, he cannot take time off. The few times Jerez has missed work, his family members, i.e., his wife, sons, and nephews, have covered for him.

18. Jerez reports directly to the Building's superintendent, a man Jerez knows as "Maro." Maro has been working at the Building for approximately four (4) years, and he works the daytime shift, from 7 a.m. through 7 p.m., from Monday through Saturday. Maro reports directly to defendants, and, on information and belief, has worked for defendants at defendants' other buildings over many years.

19. Defendants subject Jerez to abusive treatment and inhumane working conditions. For example, Maro often yells at Jerez, throws away his belongings, and barks out orders. During the cold-weather months, defendants refuse to turn on the heating for Jerez's shifts, claiming the heat turns off automatically at the beginning of Jerez's weekday and weekend shifts and nothing can be done to turn it back on.

20. Maro tells Jerez he must follow all the orders Maro gives him, because they come straight from "Jackie," the building owner's son. On occasions when Jerez has complained to Maro about his working conditions and low pay, Maro has told Jerez

4

he is free to leave because "the boss is a millionaire" and can hire anyone to replace him.

21. Jerez is required to clean the Building premises, including common areas, hallways, and bathrooms, each night. Jerez routinely asks defendants to provide him with cleaning supplies so he may carry out his maintenance duties, but defendants ignore his requests. As a result, Jerez often brings his own cleaning supplies, including a mop, garbage bags, and soap, to clean the Building. Defendants do not reimburse Jerez for the cost of purchasing these cleaning supplies.

22. Defendants pay Jerez every fifteen (15) days. He receives two (2) checks, one covering the weekday shift and another covering the weekend shift. Throughout his employment, Jerez has received a check, fluctuating within the range of seven hundred and forty-three dollars and ninety-three cents ($743.93) to seven hundred and seventy-one dollars and seventy-one cents ($771.71), every fifteen (15) days for the weekday shift, and two hundred and fifty eight dollars and fifty-eight cents ($258.58) every fifteen (15) days for the weekend shift. The checks do not provide overtime compensation at a rate of one and one half (1½) times Jerez's regular rate of pay for hours worked in excess of forty (40) during any workweek.

23. Jerez has asked defendants to increase his pay, which is less now than it was at the start of his employment. Jackie told Jerez, in Spanish, that his pay cannot be increased because Jerez does not speak English.

24. Jerez's pay stubs do not reflect the total number of hours he works per week. Jerez went to defendants' offices and asked defendants why the stubs do not reflect all the hours he works per week. Jackie told Jerez, in Spanish, that all hours worked cannot be recorded because they are too many.

25. In or about, June 23, 2011 Jerez asked Jackie for vacation time so he could go to Ecuador to visit relatives. Jackie told Jerez, in Spanish, that he was not entitled to vacation time and told him he had to find someone to cover for him during the time he planned to be absent. The next day, Jerez reported to work and found someone else working his shift. Maro told Jerez this person had been hired to replace Jerez and sent Jerez home, telling him he was no longer needed. Jerez left for Ecuador a few days later.

26. Upon Jerez's return from Ecuador in or about July 13, 2011, Jerez went to the Building to ask for his job back. Maro told Jerez that he had to work that very night, because the person who had been hired to replace him had quit. Jerez resumed his usual work schedule, and continues to work at the Building as of the filing of this lawsuit.

27. The FLSA and NYLL require that employers pay all employees a statutory minimum wage, as well as one and one half (1½) times their regular rate of pay for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

28. Although Jerez regularly worked ninety-six (96) hours per week, he was not paid for any of the overtime that he worked.

29. The NYLL requires that employers pay all employees spread-of-hours compensation of one (1) hour's pay at the minimum wage for each day in which employees work more than ten (10) hours.

30. Although Jerez worked twelve (12) hours per day during the weekday shift, and thirty-six (36) continuous hours during the weekend shift, he was not paid spread-of-hours compensation for each day in which he worked more than ten (10) hours.

31. At all times during Jerez's employment, defendants failed to post a sign informing Jerez of employee rights under the FLSA, NYLL, or Wage Order, or the procedures for filing a charge for violations of these state and federal laws.

32. At all times during Jerez's employment, defendants made no effort to explain or otherwise inform Jerez of employee rights under the FLSA and NYLL, and instead took affirmative acts to mislead and misinform Jerez of his statutory rights under the FLSA and NYLL. As a result, Jerez has not been given effective notice of these laws.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

33. Plaintiff repeats and realleges paragraphs 1 through 32 as if fully set forth herein.

34. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

35. Defendants were required to pay to plaintiff the applicable federal minimum wage rate.

36. Defendants failed to pay plaintiff the minimum wages to which he is entitled under the FLSA.

37. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay plaintiff the minimum wages to which he is entitled under the FLSA.

38. As a result of defendants' willful violations of the FLSA, plaintiff suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages,

pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (New York Labor Law – Unpaid Minimum Wage)

39. Plaintiff repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

40. Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed plaintiff.

41. Defendants failed to pay plaintiff the minimum wages to which he is entitled under the NYLL.

42. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay the plaintiff minimum hourly wages.

43. As a result of defendants' violations of the NYLL, plaintiff is entitled to recover his unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

## THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

44. Plaintiff repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45. Defendants were required to pay plaintiff no less than one and one-half (1½) times the regular rate at which plaintiff was employed for all hours worked in excess of forty (40) hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq*.

46. Defendants failed to pay plaintiff the overtime wages to which he is entitled under the FLSA.

47. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay plaintiff overtime wages.

48. Due to defendants' violations of the FLSA, plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### FOURTH CLAIM
### (New York Labor Law – Unpaid Overtime)

49. Plaintiff repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

50. Under the NYLL and supporting New York State Department of Labor Regulations, defendants were required to pay plaintiff time and one half (1½) of the regular rate for all hours they worked in excess of forty (40).

51. Defendants failed to pay plaintiff the overtime wages to which he was entitled under the NYLL.

52. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiff the correct amount of overtime wages.

53. Due to defendants' willful violations of the NYLL, plaintiff is entitled to recover his unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

### FIFTH CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. Defendants have willfully failed to pay plaintiff additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which he worked more than ten hours.

56. By defendants' failure to pay plaintiff spread-of-hours pay, defendants have willfully violated the NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §§ 137-1.7, 3.10.

### SIXTH CLAIM
### (New York Labor Law – Allowance for Tools and Supplies)

57. Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

58. Defendants have willfully failed to reimburse plaintiff for advancing the costs of tools and supplies required by defendants for the maintenance of the Building.

59. By defendants' failure to reimburse plaintiff for the costs of such tools and supplies, defendants have willfully violated the NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. § 141-1.9.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, respectfully requests that this Court enter a judgment:

    a. to declare that defendants have violated the minimum wage provisions and overtime provisions of the FLSA, NYLL and the Wage Order;

    b. to declare that defendants' violations of the FLSA were willful;

    c. to declare that defendants have violated the spread-of-hours provision of the NYLL and the Wage Order;

    d. to declare that defendants have violated the allowance for tools and supplies provision of the Wage Order;

    e. to find that there is an equitable tolling of the statute of limitations under the FLSA and NYLL;

  f. to award plaintiff damages for the difference between the full hourly wage as mandated by the FLSA and the NYLL, and the hourly wages actually paid to the plaintiff for the hours he worked;

  g. to award plaintiff damages for unpaid overtime wages.

  h. to award plaintiff damages for unpaid spread-of-hours compensation;

  i. to award plaintiff damages for unreimbursed maintenance tools and supplies expenses;

  j. to award plaintiff liquidated damages under the FLSA and the NYLL;

  k. to award plaintiff prejudgment interest under the NYLL; and

  l. to award plaintiff reasonable attorneys fees' and costs pursuant the FLSA and the NYLL.

  m. to award plaintiff such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
   August 1, 2011

           BERKE-WEISS & PECHMAN LLP

           By: _____
           Louis Pechman
           488 Madison Avenue – 11th Floor
           New York, New York 10022
           (212) 583-9500
           *Attorneys for Plaintiff*